UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CURTIS F. SAMPLE, JR.,

Plaintiff,

v.

INDIANA STATE PRISON *et al.*,

Defendants.

CAUSE NO. 3:19-CV-538 DRL-MGG

OPINION AND ORDER

Curtis F. Sample, Jr., a prisoner without a lawyer, filed a complaint alleging that he was subjected to inhumane conditions while housed at the Indiana State Prison. A filing by an unrepresented party "is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Under 28 U.S.C. § 1915A, the court still must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Mr. Sample alleges that he was employed in the kitchen on June 24, 2017, and he was scheduled to begin his shift following the 1:00 a.m. count. Around 12:50 a.m., Ofc. Shanta Owens woke Mr. Sample. He says he thanked her and prepared for work. Following the count, he went to work, but after about 45 minutes, Lt. Draper, Sgt. Wynn,

and Lt. Moses Itodo[1] arrived and placed Mr. Sample in handcuffs. ECF 1 at 15-16. He was handcuffed because Ofc. Owens brought a disciplinary charge against him alleging that he sexually assaulted her. *Id.* at 18. On the way to the medical unit for screening on the charge, Mr. Sample walked through an area with a gate and Lt. Itodo "banged" Mr. Sample's shoulder against the fence post forcefully as they walked through together. *Id.* at 16. Mr. Sample's shoulder remained stiff, red, and throbbing several hours later when he reported the injury and was still causing him pain at least twelve days later, when he requested care for his shoulder. *Id.* at 17-18.

Mr. Sample has sued Sgt. Itodo for this "unnecessary roughness." *Id.* at 6. The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.* "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Constitution. *Graham v. Conner*, 490 U.S. 386, 396 (1989) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973), *cert. denied* 414 U.S. 1033 (1973)). Here, the facts suggest that the use of force was unnecessary. Mr. Sample was already in handcuffs. And, Mr. Sample reported

---

[1] Lt. Draper and Lt. Itodo were both sergeants when these events took place, but they were promoted before Mr. Sample filed his complaint, so they will be referred to by their current titles here.

significant pain. While his reported pain seems somewhat disproportionate to the circumstances he describes, this court must accept Mr. Sample's allegations as true. Thus, Mr. Sample will be permitted to proceed on this claim against Lt. Itodo.

After the screening on the disciplinary charge, Mr. Sample was taken to SMU – a mental health unit within G dorm. He remained in SMU for twelve days, from June 24, 2017 until July 6, 2017. Mr. Sample describes the condition in his cell as "deplorable" and "inhumane." ECF 1 at 16-17. The cell contained urine, feces, blood, vomit, and semen on the floor and walls. The mattress was stained and soiled, and there was no bedding. There were spiders, centipedes, and ants. Mr. Sample asked Lt. Draper for cleaning supplies, but he said to let the officer working the unit know. Lt. Itodo then laughed and said, "Welcome to SMC, Muthaf**ka." ECF 17.[2] Mr. Sample brought the unsanitary conditions to the attention of Officer Terri Garcia, the Unit Officer of SMU. Officer Garcia responded by telling Mr. Sample that "SMC is different entirely from population" and that nothing was allowed in the cells, including cleaning supplies or legal materials. *Id.* The cell contained only a video camera, a metal slab with a mattress, and a toilet that could be flushed with the assistance of a staff member. His toilet, however, was clogged and inoperable. He either had no sink at all, or a sink with only cold water.[3] There was a

---

[2] It is unclear if Mr. Sample is suing Lt. Itodo for his rude language, but to the extent that he is, this allegation does not state a claim. *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000), *abrogated on other grounds by Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020) (rude language or verbal harassment by prison staff "while unprofessional and deplorable, does not violate the Constitution.").

[3] Mr. Sample's complaint alleges both that he had no accessible water (and that he became dizzy due to inadequate water), and that there was a sink attached to the toilet that provided only cold

window that stayed open, and his cell was cold. Nonetheless, there was a strong smell of feces and urine. The ventilation and fire safety systems were inadequate. Bright lights stayed on twenty-four hours a day, making sleep difficult. He was not permitted to leave the cell for exercise or to see visitors. And his diet contained insufficient calories.

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id*. (citations omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation, *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. Under the law:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

water. It is unclear which of these allegations is associated with his time in SMU. *See* ECF 19; ECF 22.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted); *see also Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (where inmate complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference.").

Here, giving Mr. Sample the benefit of the inferences to which he is entitled at this early stage of the case, he has stated a claim against Lt. Itodo and Officer Garcia for being deliberately indifferent to the unsanitary conditions in his cell caused by the presence of urine, feces, blood, vomit, and semen.

However, Mr. Sample's allegation that he was deprived of all personal property and bedding for twelve days does not state a claim. Mr. Sample has alleged that Lt. Itodo and Officer Garcia were aware of the conditions of his cell upon arrival, but he has not alleged that they are responsible for refusing to provide bedding or hygiene items throughout his twelve days in SMC. Similarly, he has not alleged that either Sgt. Itodo or Officer Garcia knew that he was not receiving enough water. "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id.* at 596. Thus, he cannot proceed against Lt. Itodo or Officer Garcia on these claims.

Mr. Sample alleges that the fire safety system is inadequate, but he does not explain how it is inadequate. He also does not explain how he was harmed by it. He offers nothing more than his conclusion. This does not state a claim.

Mr. Sample also alleges that the ventilation and air flow were inadequate. He alleges that the system provided inadequate temperature control, and that it resulted in excessive odors, heat and humidity in the shower areas, and low temperatures in cells.

Mr. Sample offers no further details and does not explain how he was harmed by these conditions. He offers nothing more than conclusory statements.

Likewise, Mr. Sample's allegation that he was subjected to bright lights does not state a claim. Mr. Sample does not explain how bright the lights were. As for harm, he alleges that they caused eyestrain and fatigue. But he does not say whether he was permitted to cover his eyes to block out the light and help him sleep. Based on the current complaint, the court cannot plausibly infer that leaving the lights on for 24 hours each day states a claim. *See Mathews v. Raemisch*, 513 Fed. Appx. 605 (7th Cir. 2013).

Mr. Sample also complains that he was not permitted to have any visitors, allegedly by order of Warden Ron Neal, Assistant Deputy Warden Dan McBride, Kenneth Gann, and Waren Payne. Depriving Mr. Sample of visitors for twelve days does not amount to a constitutional violation. Although Mr. Sample may have found the lack of companionship difficult, "lack of companionship and a low level of intellectual stimulation do not constitute cruel and unusual punishment." *Caldwell v. Miller*, 790 F.2d 589, 593 n.16 (7th Cir. 1986).

Mr. Sample also complains that he was not permitted to leave his cell for exercise during his twelve days in SMC. However, Mr. Sample has not alleged that he was deprived of all physical activity. Though a total lack of exercise would state a claim where "movement is denied and muscles are allowed to atrophy," *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985), the denial of "desirable, entertaining diversions . . . [do] not raise a constitutional issue," *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988).

Recreation and the ability to obtain physical exercise have been properly recognized as important human needs. See, *e.g.*, *Davenport v. DeRobertis*, 844 F.2d 1310, 1315–16 (7th Cir.1988). However, there is no constitutional right to a specific form of recreation. Rather, only the objective harm that *can* result from a significant deprivation of movement implicates the Eighth Amendment. *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir.1985) (the Eighth Amendment is implicated where a denial of exercise causes the muscles to atrophy and threatens the health of the individual).

*Douglas v. DeBruyn*, 936 F. Supp. 572, 578 (S.D. Ind. 1996). Thus, merely alleging that he was denied access to recreation time outside of his cell for a twelve-day period does not state a claim.[4]

Mr. Sample further alleges that he was deprived of adequate food while in SMU and, as a result, he lost some weight. He was provided with a bologna and cheese sandwich, a piece of fruit (an apple or banana), and a half cup of vegetables three times per day. According to MyFitnessPal.com, the diet Mr. Sample received contained approximately 1,560 calories.[5] Mr. Sample believes he was entitled to a diet consisting of 2,000 calories. In evaluating whether a prisoner was served an adequate quantity of food, "a court must assess the amount and duration of the deprivation." *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999). Mr. Sample describes receiving bread, protein, dairy, and

---

[4] Mr. Sample also alleges that IDOC policy mandates that he be permitted to leave his living quarters for an hour of exercise five days a week. ECF 1 at 22-23. "However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices." *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003). Therefore, this allegation does not state a claim. This is true of Mr. Sample's other allegations of policy violations as well, including violations of policies regarding food allotments, heating, lighting, ventilation, clothing, bedding, mail, visitation, reading and writing materials, and hygiene materials.

[5] According to MyFitnessPal.com (last visited Feb. 3, 2021), a bologna sandwich with cheese contains approximately 379 calories, an apple contains 95 calories, a banana contains 105 calories, and a half cup of carrots contains 40 calories.

fresh fruits and vegetables regularly. The quantities he describes receiving over these twelve days were not so lacking as to implicate constitutional concerns.

Between 3:50 a.m. and 4:30 a.m., Nurse Samantha passed out medication. When she gave Mr. Sample his medication, Mr. Sample told her that his shoulder was stiff, red, and throbbing because Lt. Itodo was unnecessarily rough with him. She responded by telling Mr. Sample to fill out a health care request form.

On June 25, 2017, Mr. Sample again asked for cleaning supplies. Mr. Garcia denied the request. Mr. Sample has sued Mr. Garcia for refusing him cleaning supplies. The Constitution mandates adequate sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). It does not mandate that inmates be provided with cleaning supplies. It is reasonable to deny an inmate in SMU access to cleaning supplies for safety and security reasons. This does not state a claim.

On June 26, 2017, Mr. Sample was awoken when he was bitten by an insect or spider. He told an unidentified staff member and nurse. The nurse told him to fill out a healthcare request form. However, he says he could not seek care by filling out a healthcare request form because he is not permitted to have a pen or paper while in SMU. On July 3, 2017, he was bitten again by an insect or spider. He developed a rash. Mr. Sample indicates that he was again denied medical attention, although he does not say who denied his request for care. To establish an Eighth Amendment claim for constitutionally inadequate medical care, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*,

511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). While Mr. Sample's bug bites were perhaps uncomfortable, they are not "serious" in a constitutional sense. Furthermore, he has not described behavior on the part of any defendant that amounts to deliberate indifference. Accordingly, he will not be permitted leave to proceed on these claims.

On July 6, 2017, Mr. Sample was moved from SMU to Disciplinary Segregation or I.D.U. Following the transfer, he obtained healthcare request forms and he requested care for his shoulder injury, insect bites, and rash. He then received medical care for both conditions: an x-ray of his shoulder and antibiotics for the rash. ECF 1 at 28, 31-33. He also filed a grievance regarding the conditions in SMU. Mr. Sample indicates that some of the conditions persisted in I.D.U, including the presence of insects and rodents. However, he provides no further details regarding the conditions in I.D.U. His claims regarding insects and rodents will be addressed further in a moment, but his vague allegation that some of the conditions persisted is insufficient to state a claim.

On October 10, 2017, Mr. Sample was relocated to Restrictive Housing Unit or DCH. There were still insects and rodents. Approximately $100 of Mr. Sample's food and hygiene items were destroyed by rodents. He filed grievances about the rodents on March 26, 2018, and April 23, 2018. Prolonged exposure to infestations by rodents or insects can amount to an Eighth Amendment violation. *See Davis v. Williams*, 216 F.Supp.3d 900, 907-08 (N.D. Ill. 2016). But, other than an allegation that his property was destroyed, Mr. Sample provides no details regarding the extent of the infestation or how he was harmed. The loss of property does not state a claim.[6] While Mr. Sample alleges generally that there was a problem with insects and rodents from the time he was transferred from SMC through the time he was in restrictive housing, he provides almost no details. He alleges that he was held for twelve days in June and July in a cell where he was bitten by insects on two occasions, that he moved and there was still a problem (although he didn't provide details), and that in October - in a third cell - a rodent consumed his food. He has not pleaded facts from which it can be inferred that the exposure to either insects or rodents was either significant or prolonged; in short, he hasn't stated a claim.

---

[6] A state tort claims act that provides a method by which a person can seek reimbursement for the negligent loss or intentional depravation of property meets the requirements of the due process clause by providing due process of law. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post deprivation remedy.") Indiana's tort claims act (Indiana Code § 34-13-3-1  *et seq.*) and other laws provide for state judicial review of property losses caused by government employees and provide an adequate post deprivation remedy to redress state officials' accidental or intentional deprivation of a person's property. *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) ("Wynn has an adequate post deprivation remedy in the Indiana Tort Claims Act, and no more process was due.").

Mr. Sample has sued both the Indiana Department of Correction and the Indiana Department of Social and Health Services for the alleged violations above. But state agencies such as these are immune from suit under the Eleventh Amendment. *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001). There are three exceptions to the Eleventh Amendment immunity, *see MCI Telecommunications Corp. v. Ill. Commerce Comm'n*, 183 F.3d 558, 563 (7th Cir. 1999), but none applies here. Thus, he cannot proceed against either the IDOC or the Indiana Department of Social and Health Services.

He has also sued the Indiana State Prison. The Indiana State Prison is where the alleged events occurred, but it is a building, not an individual or a policy-making unit of government that can be sued pursuant to 42 U.S.C. § 1983. *See Powell v. Cook Cty. Jail*, 814 F. Supp. 757, 758 (N.D. Ill. 1993); *White v. Knight*, 710 F. App'x 260, 262 (7th Cir. 2018) ("[A] building is not a person capable of being sued under § 1983."). Therefore, Mr. Sample may not proceed against the Indiana State Prison.

Mr. Sample has sued several individuals who had no direct personal knowledge of the conditions of Mr. Sample's various cells between July 2017 and October 2017. Simply being in charge or being a supervisor is not enough. Therefore, Governor Holcomb, Commissioner Robert Carter, Jr., Warden Ron Neal, Dan McBride, Kenneth Gann, Mr. Payne and Mr. Bodlovich must all be dismissed.

Mr. Sample has sued Wexford of Indiana, too. He alleges that Wexford was "responsible for the overall operation of the Health Care Services of Indiana State Prison, including the denial of medical treatment throughout" his twelve days at SMU, including after he complained about being bitten. ECF 1 at 5. There is no general *respondeat superior*

liability under 42 U.S.C. § 1983. *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001); *see also Johnson v. Dossey*, 515 F.3d 778, 782 (7th Cir. 2008) ("[A] private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights."). Because Mr. Sample's allegations against Wexford appear to be based only on the alleged poor decisions that its staff made in connection with his care, he cannot proceed against Wexford.

Mr. Sample has also sued Ms. St. Martin, the disciplinary hearing officer that handled the hearing on his conduct violation. He alleges that she authorized five to six months of segregation without a complete hearing. She allegedly left the hearing before it had concluded. The Constitution does not create a due process liberty interest in avoiding transfer within a correctional facility or remaining in the general prison population. *See Wilkinson v. Austin*, 545 U.S. 209, 222 (2005); *Sandin v. Conner*, 515 U.S. 472 (1995). Instead, an inmate will be entitled to due process protections only when the more restrictive conditions pose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. After *Sandin*, inmates have no liberty interest in avoiding short-term transfer to segregation for administrative, protective, or investigative purposes, even when they are subjected to harsher conditions as a result. *See, e.g., Townsend v. Fuchs*, 522 F.3d 765, 766 (7th Cir. 2008); *Lekas v. Briley*, 405 F.3d 602, 608-09 (7th Cir. 2005). However, placement in long-term segregation approaching a year or more can implicate a liberty interest, requiring further inquiry into whether the conditions of confinement impose an atypical, significant hardship. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 698-99 (7th Cir. 2009) (determination of

whether 240 days in segregation imposed an atypical, significant hardship could not be made at the pleading stage). Here, Mr. Sample was placed in segregation for four to five months. This does not amount to a constitutional violation.

Mr. Sample filed grievances related to the allegations in his complaint. Those grievances were denied, and he has now sued Mr. Newkirk, the grievance specialist, because he is "responsible for the overall operation of the Grievance Process" including the denial of Mr. Sample's grievances. ECF 1 at 5. But Mr. Sample has no constitutional right to access the grievance process. *See Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008) (noting that there is not a Fourteenth Amendment substantive due process right to an inmate grievance procedure).

Finally, Mr. Sample has sued Ofc. Shanta Owens. It appears that he has included her as a defendant because she brought the allegedly false conduct report that triggered this series of events. "Falsifying a disciplinary charge [does] not give rise to liability for unconstitutional retaliation unless the motive for the fabrication was to retaliate for the exercise of a constitutional right." *Perotti v. Quinones*, 488 Fed. Appx. 141, 146 (7th Cir. Ind. 2012) (*citing Lagerstrom v. Kingston*, 463 F.3d 621, 625 (7th Cir. 2006)). Mr. Sample has made no such allegation. Therefore, he may not proceed against Ofc. Owens.

For these reasons, the court:

(1) GRANTS Curtis F. Sample leave to proceed against Lt. Moses Itodo in his individual capacity for compensatory and punitive damages for subjecting Mr. Sample to excessive force when he shoved him into a fence post on June 24, 2017;

(2) GRANTS Curtis F. Sample leave to proceed against Lt. Moses Itodo and Ofc. Terrie Garcia in their individual capacities for compensatory and punitive damages for subjecting Mr. Sample to unsanitary living conditions from being housed in a cell with feces, urine, blood, vomit, and semen from June 24, 2017 to July 6, 2017, in violation of the Eighth Amendment;

(3) DISMISSES Indiana Department of Correction, Indiana Department of Social and Health Services, Indiana State Prison, Governor Eric Holcomb, Commissioner Robert Carter, Jr., Warden Ron Neal, Dan McBride, Kenneth Gann, Mr. Payne, Wexford of Indiana Mr. Bodlovich, Mr. Newkirk, Ofs. Shanta Owens, and Lt. K. St. Martin;

(4) DISMISSES all other claims;

(5) DIRECTS the clerk to request Waiver of Service from (and if necessary, the United States Marshals Service to serve process on Lt. Moses Itodo and Ofc. Terrie Garcia at the Indiana Department of Correction with a copy of this order and the complaint (ECF 1), pursuant to 28 U.S.C. § 1915(d);

(6) ORDERS the Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, social security number, last employment date, work location, and last known home address of any defendant that does not waive service, if it has such information; and

(7) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), that Lt. Moses Itodo and Ofc. Terrie Garcia respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

February 5, 2021                              s/ Damon R. Leichty
                                             Judge, United States District Court